IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
COLUMBUS DIVISION

| | |
|---|---|
| EFRIEM BAILEY, | * |
| Plaintiff, | * |
| vs. | * |
| | CASE NO. 4:13-CV-496 (CDL) |
| SONNY G. DAVIS, in his individual capacity, SONNIE WALLACE, in his individual capacity, FORT GAINES POLICE DEPARTMENT, THE CITY OF FORT GAINES, GEORGIA, | * * * * |
| Defendants. | * |

O R D E R

Efriem Bailey claims that Fort Gaines, Georgia Police Chief Sonny G. Davis struck him in the head with a pistol without justification. He further contends that a Fort Gaines police officer, Sonnie Wallace, should have intervened to stop the attack. Bailey sues Davis and Wallace in their individual capacities, and he also sues the City of Fort Gaines and the Fort Gaines Police Department. He asserts his claims pursuant to 42 U.S.C. § 1983 and Georgia law. Three Defendants—the City of Fort Gaines, the Fort Gaines Police Department, and Wallace—moved for summary judgment. For the reasons discussed below, that motion (ECF No. 25) is granted as to the Fort Gaines Police Department, Officer Wallace, and all state law claims against the City of Fort Gaines, but the motion is denied as to Bailey's

§ 1983 claim against the City of Fort Gaines based on Chief Davis's conduct.

## SUMMARY JUDGMENT STANDARD

Summary judgment may be granted only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  In determining whether a *genuine* dispute of *material* fact exists to defeat a motion for summary judgment, the evidence is viewed in the light most favorable to the party opposing summary judgment, drawing all justifiable inferences in the opposing party's favor.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).  A fact is *material* if it is relevant or necessary to the outcome of the suit.  *Id.* at 248.  A factual dispute is *genuine* if the evidence would allow a reasonable jury to return a verdict for the nonmoving party.  *Id.*

## FACTUAL BACKGROUND

Bailey lives in Fort Gaines, Georgia.  When this action arose, Davis was Chief of Police for the City of Fort Gaines and Wallace was a police officer.  Bailey, Officer Wallace, and Chief Davis have all known each other for many years.  Bailey alleges that his problems began when Officer Wallace illegally stopped Bailey's vehicle without cause on at least five separate occasions.  Bailey believes that the last traffic stop occurred

around September 2011 and that Officer Wallace unlawfully pulled him over to harass him because Bailey is black.

Perceiving that he was the victim of racial harassment, Bailey complained to the Fort Gaines Police Department about Officer Wallace's allegedly illegal traffic stops. Bailey testified that he complained about Officer Wallace's harassment several times without any response. Eventually, Chief Davis, along with the Mayor of Fort Gaines, conducted an investigation into Officer Wallace's allegedly illegal traffic stops. Officer Wallace denied the allegations. According to Officer Wallace, he pulled Bailey over only one time to issue a seatbelt citation.

Officer Wallace contends that Bailey fabricated the unlawful traffic stop story to retaliate against Officer Wallace for having a romantic relationship with Roderica Davis, Bailey's girlfriend and the mother of Bailey's child. Officer Wallace believes that Bailey resented him because of his relationship with Roderica, and that Bailey used the false information hoping that the police department would fire Officer Wallace.

The investigation did not result in Officer Wallace's termination or suspension from the police department. Bailey felt the investigation was cursory and was unhappy with the police department's process for responding to citizen complaints of police harassment. As a result of the investigation, Chief

Davis testified that he and the Mayor informed Bailey on many occasions that he was not allowed to visit the police station while Officer Wallace was on duty. *See* Davis Dep. 78:10-18, ECF No. 27-7. Bailey, however, claims that he was unaware of the decision to ban him from the department.[1] Pl.'s Mem. in Resp. to Def.'s Mot. for Summ. J. 17, ECF No. 27.

Because Bailey felt that the police department was not adequately investigating his complaints, he visited the police department on November 6, 2011 to have a "man-to-man talk" with Officer Wallace. Bailey Dep. 163:14-15. When Bailey arrived at the police department, Officer Wallace promptly summoned Chief Davis because Chief Davis had previously instructed Wallace not to have any interactions with Bailey outside the presence of a witness. After contacting Chief Davis, Officer Wallace engaged in a conversation with Bailey about Roderica. During that conversation, Chief Davis arrived at the police department. When he arrived, he placed his gun on the counter and asked Bailey why he was at the police department. When Bailey attempted to respond, Chief Davis interrupted Bailey and said "[g]et the fuck out of my police station." *Id.* at 65:4. Bailey complied and calmly walked out of the police station. After

---

[1] Bailey also testified that Officer Wallace made a harassing phone call to Bailey's home, prompting Bailey's visit to the police department. Officer Wallace denies making any unlawful calls.

4

Bailey left, Chief Davis picked up his gun and followed Bailey outside. Officer Wallace remained inside.

Bailey testified that the following events occurred outside the police station: Bailey noticed Chief Davis approaching him and told the Chief that he was unarmed. Bailey pulled up his shirt to show the Chief that he was unarmed. Chief Davis struck Bailey on the head with his gun, causing Bailey to fall to the ground. *Id.* at 23:15-23. When Chief Davis attempted to pick Bailey up, he fell again. Chief Davis claims that he hit Bailey with the "heel of [his] hand," not his gun. Davis Dep. 164:13.

The parties agree that Officer Wallace did not witness Chief Davis strike Bailey. Bailey testified that, after he had fallen to the ground and after Chief Davis attempted to pick him up, he noticed for the first time that Officer Wallace was standing nearby. Bailey Dep. 69:1-13. Officer Wallace also testified that he did not witness the altercation; after Bailey and Chief Davis exited the police station, Officer Wallace waited in his office for about one minute before walking outside. Wallace Aff. ¶ 15, ECF No. 25-5. When he got outside, Officer Wallace testified that he saw Bailey lying on the ground, and Chief Davis standing nearby. When Officer Wallace asked what happened, the Chief responded that he "had to hit him." *Id.* ¶ 16. Bailey contends that he suffered serious

5

injuries because of the altercation. Defendants deny that Bailey was seriously injured.

The day after the altercation, Bailey filed a complaint against Chief Davis at the Fort Gaines City Hall. That same day, the City Council suspended Chief Davis indefinitely without pay. Chief Davis later pled nolo contendere to a misdemeanor charge of battery and guilty to a felony charge of violation of oath by public officer.

## DISCUSSION

As a result of the altercation with Chief Davis, Bailey sued Chief Davis and Officer Wallace in their individual and official capacities. He also sued the Fort Gaines Police Department but now acknowledges that the department is not a legal entity capable of being sued and thus concedes that summary judgment in favor of the department is appropriate. Finally, Bailey sued the City of Fort Gaines based on the conduct of Chief Davis and Officer Wallace. Wallace and the City seek summary judgment. The Court addresses the liability of Wallace and the City in turn.

**I.   Claims Against Officer Wallace in His Individual Capacity**

A.   Immunity from Federal Constitutional Claims

Bailey contends that Chief Davis used excessive force in violation of the Fourth Amendment when he struck Bailey with his pistol, and that Officer Wallace violated the Fourth Amendment

6

when he failed to intervene to stop Chief Davis from using excessive force.[2]  Officer Wallace responds that he is entitled to qualified immunity as to Bailey's federal constitutional claims.  "Qualified immunity protects municipal officers from liability in § 1983 actions as long 'as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'"  *Lewis v. City of W. Palm Beach, Fla.*, 561 F.3d 1288, 1291 (11th Cir. 2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).

To determine if an officer is entitled to qualified immunity, the Court must first determine whether the officer was acting in "the scope of his discretionary authority when the alleged[]" constitutional violation occurred.  *Kesinger ex rel. Estate of Kesinger v. Herrington*, 381 F.3d 1243, 1248 (11th Cir. 2004).  Here, the parties do not dispute that Officer Wallace was acting within his discretionary authority when he allegedly failed to intervene.  The next step requires the "plaintiff to establish that qualified immunity is not appropriate."  *Bates v. Harvey*, 518 F.3d 1233, 1242 (11th Cir. 2008) (internal quotation marks omitted).  Qualified immunity is not appropriate when (1) "the official violated a statutory or constitutional right," and (2) that "right was 'clearly established' at the time of the

---

[2] In the Complaint, Bailey claimed that Officer Wallace, and all of the other defendants, violated his First, Fourth, Fifth, Eighth, and Fourteenth Amendment rights.  But in his brief opposing summary judgment, Bailey only pursued the Fourth Amendment claim.

7

challenged conduct." *Ashcroft v. al-Kidd*, 131 S. Ct. 2074, 2080 (2011) (quoting *Harlow*, 457 U.S. at 818).

The Court concludes that Officer Wallace's conduct did not violate Bailey's clearly established Fourth Amendment rights. To determine if a right is clearly established for purposes of qualified immunity, the Court asks "'whether the state of the law at the time of an incident provided fair warning to the defendants that their alleged [conduct] was unconstitutional.'" *Salvato v. Miley*, Nos. 14-12112, 14-13424, 2015 WL 3895455, at *4 (11th Cir. June 25, 2015) (alteration in original) (quoting *Tolan v. Cotton*, 134 S. Ct. 1861, 1865 (2014)). Although the plaintiff does not have to point to a case with exactly analogous facts, the case law must be developed enough that "'every reasonable official would have understood that what he is doing violates [the plaintiff's] right.'" *Id.* (alteration in original) (quoting *al-Kidd*, 131 S. Ct. at 2083).

The law is clearly established that an officer violates the Fourth Amendment when he is "present at the scene" and yet "fails to take reasonable steps to protect the victim of another officer's use of excessive force." *Skrtich v. Thornton*, 280 F.3d 1295, 1301 (11th Cir. 2002); *see also Byrd v. Clark*, 783 F.2d 1002, 1007 (11th Cir. 1986), *abrogated on other grounds as noted in Nolin v. Isbell*, 207 F.3d 1253, 1253 (11th Cir. 2000) ("If a police officer . . . fails or refuses to intervene when a

8

constitutional violation such as an unprovoked beating takes place in his presence, the officer is directly liable under Section 1983.").

Officer Wallace, however, faced a different situation than the one described in the clearly established case law. He was not present duirng, and did not witness, the alleged use of excessive force. Instead, he witnessed certain events leading up to the altercation. Bailey failed to direct the Court to any case holding a bystander liable for a constitutional violation under these circumstances. To the contrary, some courts have expressly refused to hold an officer liable for failing to intervene when the officer is not present when the police brutality occurs. *Compare Ensley v. Soper*, 142 F.3d 1402, 1408 (11th Cir. 1998) (declining to hold an officer liable for failing to intervene because "we see no evidence in the record that might show that [the officer] observed his fellow officers' alleged abuse of [plaintiff] or that he had an opportunity to intervene"), *with Byrd*, 783 F.2d at 1007 (holding that summary judgment in favor of an officer was inappropriate because "[t]here is evidence that Officer Whitley was present during the encounter.") *and Salvato*, 2015 WL 3895455, at *6-*7 (finding a jury question on whether an officer violated clearly established law when she observed a fellow officer use excessive force and did not intervene).

9

The record viewed in the light most favorable to Bailey reveals that Officer Wallace was not present when Chief Davis struck Bailey. Officer Wallace observed Chief Davis aggressively question Bailey as to why he was present at the police station. He then witnessed Chief Davis follow Bailey out of the police station with a gun in hand. Officer Wallace waited in his office for a moment, and then walked outside where he learned that Chief Davis had already struck Bailey. Even if Officer Wallace had suspected that Chief Davis may act inappropriately when he followed Bailey outside the police station, Officer Wallace was not on notice that his failure to follow Chief Davis outside or to stop the Chief from going outside would be considered a violation of Bailey's Fourth Amendment rights. Officer Wallace's failure to intervene did not violate Bailey's clearly established Fourth Amendment rights. Accordingly, Officer Wallace is entitled to qualified immunity as to Bailey's § 1983 claim against Officer Wallace in his individual capacity.

B. Immunity from State Law Claims

In addition to his federal constitutional claim, Bailey also brings state law claims against Officer Wallace for assault, battery, "conspiracy tort," "prima facie tort," negligence, gross negligence, and abuse of process. Compl.

10

¶ 25, ECF No. 1. Officer Wallace contends that he is immune from suit under Georgia law.

In Georgia, "[t]he doctrine of official immunity . . . provides that while a public officer or employee may be personally liable for his negligent ministerial acts, he may not be held liable for his discretionary acts unless such acts are willful, wanton, or outside the scope of his authority." *Gilbert v. Richardson*, 264 Ga. 744, 752, 452 S.E.2d 476, 482 (1994); *accord Cameron v. Lang*, 274 Ga. 122, 123, 549 S.E.2d 341, 344 (2001). Both parties agree that Officer Wallace was acting within his discretionary function when he allegedly failed to intervene in the altercation. Officer Wallace, therefore, is immune from suit unless the record reveals that he was acting with actual malice or actual intent to cause injury. *Selvy v. Morrison*, 292 Ga. App. 702, 703-04, 665 S.E.2d 401, 404-05 (2008).

In support of his contention that Officer Wallace acted with actual malice, Bailey argues that Officer Wallace illegally stopped his vehicle, and also promptly summoned Chief Davis to the police department when Bailey visited. Bailey contends that these facts show that Officer Wallace had "little regard for [Bailey's] rights." Pl.'s Mem. in Resp. to Def.'s Mot. for Summ. J. 20.

Viewing the evidence in the light most favorable to Bailey, insufficient evidence exists from which a reasonable fact finder could conclude that Officer Wallace acted with actual malice. It is sheer speculation to suggest that Officer Wallace summoned Chief Davis to the police station knowing that Chief Davis would likely inflict physical harm upon Bailey. "[I]n the context of official immunity, actual malice requires a deliberate intention to do wrong and denotes express malice or malice in fact." *Selvy*, 292 Ga. App. at 704, 665 S.E.2d at 404-05 (alteration in original) (internal quotation marks omitted). A deliberate intention to do wrong means "intent to cause the harm suffered by the plaintiffs." *Id.* at 704, 665 S.E.2d at 405. "Actual malice does not include implied malice, or the reckless disregard for the rights and safety of others." *Id.* Bailey's testimony, at most, demonstrates that Officer Wallace had animosity toward Bailey, not that he "inten[ded] to cause the harm suffered by the plaintiff[]." *Id.* Finding no evidence of actual malice, the Court concludes that Officer Wallace is entitled to official immunity as to Bailey's state law claims.

**II. Claims Against the City**

    A.   <u>Federal § 1983 Claims</u>

Bailey asserts state and federal law claims against the City of Fort Gaines based on the conduct of both Officer Wallace and Chief Davis. As to the federal claims under § 1983, there

are "strict limitations on municipal liability." *Grech v. Clayton Cnty.*, 335 F.3d 1326, 1329 (11th Cir. 2003) (en banc). "'A local government may be held liable under § 1983 only for acts for which it is actually responsible, acts which the [local government] has officially sanctioned or ordered.'" *Turquitt v. Jefferson Cnty.*, 137 F.3d 1285, 1287 (11th Cir. 1998) (quoting *Pembaur v. City of Cincinnati*, 475 U.S. 469, 479-90 (1986)). This type of liability can be established "only when the [municipality's] 'official policy' causes a constitutional violation." *Grech*, 335 F.3d at 1329. One way to show that a city policy caused a constitutional violation is "through [the] . . . acts of a final policymaker." *Id*. A municipality is not, however, liable for the actions of its officers under the theory of respondeat superior. *Bannum, Inc. v. City of Fort Lauderdale*, 901 F.2d 989, 997 (11th Cir. 1990).

To hold a municipality liable for the actions of its final policymaker, the plaintiff must first show that the local government "has authority and responsibility over the governmental function in issue." *Grech*, 335 F.3d at 1330. Second, the plaintiff must "identify those officials who speak with final policymaking authority for that local governmental entity concerning the act alleged to have caused the particular constitutional violation at issue." *Id.*

13

As to Bailey's claims against the City based on Officer Wallace's failure to intervene, Bailey pointed to no evidence that any policy or custom of the City contributed to Officer Wallace's failure to intervene. Moreover, no evidence exists that Officer Wallace was a final decisionmaker for the City. Therefore, the City is entitled to summary judgment as to Bailey's § 1983 claims against it relating to Officer Wallace's failure to intervene.

Regarding Bailey's § 1983 claim against the City based on Chief Davis's conduct, the Court finds that a genuine factual dispute exists as to whether the City is legally responsible for that conduct. Evidence exists from which a reasonable fact finder could conclude that the City—through the Mayor and Chief Davis—adopted a policy banning Bailey from the police station and that Chief Davis was the final decisionmaker for the City as to the implementation of that ban. To determine whether an officer is the final policymaker, the Court looks to "the relevant positive law, including ordinances, rules and regulations" and to "the relevant customs and practices." *Mandel v. Doe*, 888 F.2d 783, 793 (11th Cir. 1989). The Fort Gaines City policy states: "The Chief of Police will be the executive officer of the Department and . . . shall formulate department polic[y] and see that rules and regulations and all general and special orders are understood and enforced." Davis

14

Dep. 119:8-14. The practices of the City also reveal that Chief Davis had total control and authority over the manner in which the police department enforced local rules, including the ban on Bailey visiting the police department. For example, when the Fort Gaines city council investigated Bailey's allegation that Chief Davis struck him, Chief Davis allegedly told the city council that it "doesn't tell [me] how to run police business." *Id.* at 148:15-149:3. Additionally, the record contains evidence that the City let Chief Davis have full control over the police department, despite knowing that Chief Davis was "considered a bully in the community." *Id.* at 150:14-16. Sufficient evidence exists from which a reasonable factfinder could conclude that Chief Davis was the final policymaker for the City regarding the enforcement of the ban on Bailey visiting the police department, and that he was enforcing the ban when the altercation with Bailey occurred. In sum, a genuine factual dispute exists as to whether the City is legally responsible for Bailey's conduct for purposes of § 1983.

The City argues that even if Chief Davis generally was the final decisionmaker for the police department, he acted outside of his policymaking authority when he engaged in criminal behavior. As noted previously, Chief Davis pled guilty to a felony charge related to his altercation with Bailey. A circuit split appears to exist on the issue of whether a final

15

policymaker acts within the scope of his policymaking authority when his conduct involved criminal or intentionally tortious acts.  Some circuits hold that a police officer's criminal or intentionally tortious acts do not constitute the official policy of the municipality, and, therefore, the local government is not liable under § 1983.  *See, e.g.*, *Wooten v. Logan*, 92 F. App'x 143, 146-47 (6th Cir. 2004) (finding that an officer was not acting in his policymaking authority when he pulled over a citizen and sexually assaulted her); *Starrett v. Wadley*, 876 F.2d 808, 819-20 (10th Cir. 1989) (finding that a county tax assessor was acting in his role as a private citizen when he sexually harassed an employee).  Other circuits hold that the final policymaker may still be acting within the official's policymaking authority when the official's position of authority is used in the commission of the crime or tort.  *See, e.g.*, *Bennett v. Pippin*, 74 F.3d 578, 586 (5th Cir. 1996) (finding that a sheriff acted in his policymaking capacity when he raped a citizen because "he used his authority . . . to coerce sex with her"); *Williams v. Butler*, 863 F.2d 1398, 1402-03 (8th Cir. 1988) (en banc) (finding that an elected judge was acting as a final policymaker when he terminated employees for illegal reasons).

Sufficient evidence exists from which a reasonable factfinder could conclude that Chief Davis used his authority as

Chief of Police when he demanded that Bailey leave the police department, followed Bailey out of the department, and struck him. Chief Davis was able to demand that Bailey leave the police department, and Bailey complied, only because he made the demand with "power possessed by virtue of state law and made possible only because [he was] clothed with the authority of state law." *West v. Atkins*, 487 U.S. 42, 49 (1988) (internal quotation marks omitted). Chief Davis then continued to enforce the ban when he followed Bailey out of the police station to ensure that Bailey made it to his vehicle and did not come back. In the course of enforcing this ban, Chief Davis struck Bailey. While that force may be deemed excessive and ultimately criminal, Davis used his position as the Chief of Police to exert that force. Under these circumstances, the Court finds that a genuine factual dispute exists as to whether the City can be liable for Chief Davis's conduct. Therefore, summary judgment is not appropriate as to Bailey's § 1983 claim against the City based on Chief Davis's conduct.[3]

B. State Law Claims Against the City

Bailey also sues the City of Fort Gaines for violations of Georgia law, including battery, assault, abuse of process, "prima facie tort," "conspiracy tort," negligence, and gross

---

[3] To the extent that Bailey seeks punitive damages on his § 1983 claim against the City, such damages are not available. *See City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 271 (1981).

17

negligence.  Compl. ¶ 25.  The City argues that it is entitled to summary judgment on all these state law claims because Bailey failed to comply with Georgia's ante litem notice requirement. In Georgia, "[n]o action shall be entertained by the courts against the municipal corporation until the cause of action therein has first been presented to the governing authority for adjustment."  O.C.G.A. § 36-33-5(b); *see also City of Chamblee v. Maxwell*, 264 Ga. 635, 636, 452 S.E.2d 488, 490-91 (1994) ("OCGA § 36-33-5(b) requires, as a condition precedent to bringing suit against a municipal corporation for damages resulting from injuries to person or property, that the claim shall have been presented to the municipal authorities within six months of the 'happening of the event upon which' the claim is predicated.").  Georgia courts have interpreted this statute to require written notice.  The complaint must allege that the plaintiff gave such written notice, or it fails to state a claim against the municipality. *See, e.g.*, *City of Atlanta v. Frank*, 120 Ga. App. 273, 275, 170 S.E.2d 265, 267 (1969), *overruled on other grounds by City of Atlanta v. Black*, 265 Ga. 425, 430, 475 S.E.2d 551, 555 (1995) ("This compliance must be alleged in the complaint or else it cannot state a cause of action.").

Bailey's Complaint contains no allegation that Bailey properly notified the City of its claims as required by Georgia law.  The City contends, therefore, that it is entitled to

18

summary judgment. In response, Bailey argues that ante litem notice is a matter in abatement, which courts can only consider in a motion to dismiss. The City failed to raise this argument in its motion to dismiss, and thus, Bailey contends that it is not properly before the Court.

The Court is unpersuaded that the City has waived its ante litem notice defense. The Court recognizes that some confusion has emerged over the proper vehicle for raising an ante litem notice defense—a motion to dismiss or a motion for summary judgment. *Compare Maxwell*, 264 Ga. at 636, 452 S.E.2d at 489-90 (suggesting that ante litem notice is a matter in abatement, to be raised in a motion to dismiss), *with Info. Sys. & Networks Corp. v. City of Atlanta*, 281 F.3d 1220, 1228-29 (11th Cir. 2002) (addressing ante litem notice in an opinion regarding a motion for summary judgment). But the Georgia Court of Appeals has emphasized the need for "flexibility" in presenting an ante litem notice defense, and instructed that "if the [issue] is raised for resolution in the trial court and it has not otherwise been waived by the defendant, the nomenclature of the pleading which raises that issue should not be a material consideration." *Davis v. City of Forsyth*, 275 Ga. App. 747, 751, 621 S.E.2d 495, 500 (2005) (alteration in original) (internal quotation marks omitted).

Here, Bailey's Complaint does not allege that Bailey provided written notice to the City.[4]  Therefore, under Georgia law, Bailey's complaint does not state a claim against the City. Moreover, Bailey did not produce evidence in opposition to Defendants' motion for summary judgment showing that he provided timely written ante litem notice.  Accordingly, the City is entitled to summary judgment on Bailey's state law claims.

## CONCLUSION

For the reasons explained above, the Court grants summary judgment as to the following claims:  (1) Bailey's federal and state law claims against Officer Wallace in his individual capacity; (2) Bailey's § 1983 claim against the City based on Officer Wallace's conduct; (3) Bailey's state law claims against the City; and (4) Bailey's claims against the police department. The Court denies Defendants' motion for summary judgment as to Bailey's § 1983 claim against the City based on the conduct of Chief Davis.

IT IS SO ORDERED, this 8th day of July, 2015.

S/Clay D. Land
CLAY D. LAND
CHIEF U.S. DISTRICT COURT JUDGE
MIDDLE DISTRICT OF GEORGIA

---

[4]  The City has not waived its ante litem notice defense.  *See* Answer 11, ECF. No. 2.